

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:
KEVIN C. PARKER, SR.,

                Debtor.

Chapter 7
Case No. 05-17912

APPEARANCES:

CHRISTIAN H. DRIBUSCH, ESQ.
*Chapter 7 Trustee*
The Patroon Building
Five Clinton Square
Albany, NY 12207

RICHARD CROAK, ESQ.
*Attorney for Debtor*
314 Great Oaks Boulevard
Albany, NY 12203

Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

    Currently before the court is the motion filed by the chapter 7 trustee for turnover of

estate property pursuant to 11 U.S.C. § 542.  The court has jurisdiction over this core matter

pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), (b)(2)(A) and (E), and 1334.

### Facts

    The relevant facts are not in dispute.  Kevin C. Parker, Sr. (the "Debtor") filed a voluntary

petition under chapter 7 of the Bankruptcy Code on October 9, 2005.[1]  (No. 1.)  Christian H.

Dribusch, Esq. was appointed the chapter 7 trustee ("Trustee").  Prior to filing for bankruptcy

---

    [1]This case was filed prior to October 17, 2005, the effective date of the Bankruptcy Abuse
Prevention and Consumer Protection Act ("BAPCPA").  Thus, all statutory references are to the
Bankruptcy Code, 11 U.S.C. § § 101-1330 (2004), unless otherwise noted.

relief, the Debtor maintained a checking account at Trustco Bank. The Debtor's schedule of

personal property (schedule B) filed with the petition indicates that he had $2,500 in a checking

account at Trustco Bank (the "Trustco Account"). Schedule B does not disclose the address for

the branch where the Trustco Account is maintained or the bank account number. The Debtor

claims the Trustco Account exempt under New York Debtor and Creditor Law § 283(2)

(schedule C). The meeting of creditors was conducted on November 7, 2005. By Stipulation and

Order entered November 9, 2005, the Trustee's time to object to discharge pursuant to § 727 was

extended to February 7, 2006, and the Debtor agreed to supply the Trustee with copies of his

monthly bank statements for the three months prior to the date of filing, his check register or

cancelled checks exceeding $600, and his federal and state tax returns for the year prior to the

year of the filing of the petition. (No. 4.)

The Debtor's bank statements establish that $3,275.94 remained in the Trustco Account

on the date the Debtor's petition was filed. By October 14, 2005, the account balance had

dwindled to $2,563.63, which included a post-petition deposit of $300. Part of the difference is

attributable to checks the Debtor wrote pre-petition but which were not presented and deducted

from the Debtor's account until post-petition. There is nothing in the record indicating the

Debtor was acting in bad faith. It appears the Debtor wrote checks in the ordinary course, and he

subtracted the amount of his outstanding checks in order to value the Trustco Account at the time

of filing.

The Trustee received the Debtor's bank statements and tax returns on or about November

21, 2005. By letter dated January 20, 2006, the Trustee demanded in writing that the Debtor

turnover $3,324.55 from the Trustco Account, as well as $353.54 from his 2005 tax refund. The

2

Trustee sent a follow-up letter on February 22, 2006, requesting a response to his January 20, 2006 letter.

The Debtor received his discharge on February 10, 2006. On July 5, 2006, the Trustee filed his motion seeking turnover of $3,668.09 consisting of $3,324.55 of non-exempt cash, plus a pro-rata share of the Debtor's tax refund in the amount of $353.54.[2] (No. 11.) The Debtor filed opposition to the motion. (No. 14.) In his reply, the Trustee concedes that the amount at issue in the Trustco Account is $3,275.94, less the Debtor's $2,500 cash exemption, which leaves a balance of $775.94.[3] At the conclusion of oral argument, the court allowed the parties additional time to submit memoranda of law. The Debtor filed a supplemental response consisting of an attorney's affirmation (No. 15). The Trustee filed a reply affirmation to the supplemental response (No. 16), and the Debtor filed a second supplemental response (No. 18.). The matter was then considered fully submitted. Neither party filed a memorandum of law.

## Argument

It is the Trustee's position that the monies in the Debtor's bank account became property of the estate under § 541(a)(1) as of the filing date. The Trustee asserts that the Trustco Account is a chose in action evidencing a debt owed by Trustco to the Debtor as of the filing date. It is the Trustee's position that "'[b]ecause the time of the filing of a bankruptcy petition is the date of separation of the property of the estate from other property of the debtor under section 541, a

---

[2]The Trustee computed the percentage of the Debtor's tax refund due the estate by first determining that the filing date of the Debtor's petition, namely October 9, 2005, was 283 days into the calendar year. The Trustee then calculated that the estate would be entitled to .7753 (283/365) of any refund.

[3]While the amount at stake in this contested matter is not large, the impact this decision could have on the administration of chapter 7 cases is far reaching.

bank is not liable for refusing to cash a check drawn by the debtor on funds on deposit and

presented for payment after the petition is filed. Collier on Bankruptcy -15[th] ed. Rev. P.541-09. '

" (Trustee's Reply to Suppl. Response ¶ 3.) Thus, the Trustee concludes that the entire balance

in the Trustco Account as of the date of filing is property of the bankruptcy estate, and the checks

written, but not yet presented, should not to be deducted from the account balance as of the filing

date. The Trustee analogizes this to a situation where a debtor writes checks and, thereafter, his

account is restrained by a creditor. The bank would freeze the account, and any check presented

after the restraint would not be honored. Likewise, the Trustee asserts that any checks presented

after the bankruptcy filing should be deducted from the debtor's exempt portion of the monies on

deposit and not the estate's portion. The Trustee asserts that if the Debtor wished to protect his

exempt funds he should have advised the bank that (1) he filed for bankruptcy protection, (2) his

account was now property of the bankruptcy estate,  and (3) checks presented for payment post-

petition should not be honored. The Trustee could have then liquidated the account, remitted the

exempt portion to the Debtor and administered the balance for the benefit of all creditors. The

Trustee provides no case law in support of his position.

The Debtor responds that the Trustco Account balance should be reduced by the amount

of the checks written pre-petition, but negotiated post-petition, for purposes of calculating non-

exempt property. The Debtor asserts that the Trustee's analogy of the restraint against a bank

account is flawed. The Debtor admits the filing of the bankruptcy acts as a type of restraint on a

debtor's ability to expend money. The Debtor points out, however, that the restraint is not actual.

The Debtor acknowledges that if he spends non-exempt funds, he would be required to reimburse

the bankruptcy estate. He notes, however, that he does not lose the ability to access his checking

account.

The Debtor's position is that any recovery by the Trustee must be pursuant to § §547 or 549. As a result, any recoupment would come from the creditor that received the preferential payment, not the debtor who gave it. The Debtor declares that the Trustee's suggestion that he should have advised his bank not to honor his outstanding pre-petition checks is unworkable as the fees charged by a bank would be exorbitant, and he essentially would no longer be able to use his account. The Debtor claims there is no non-exempt cash from the Trustco Account for the Trustee to administer. The Debtor cites no case law in support of his position.

With respect to the Debtor's tax refund, the Trustee asserts that § 541(a)(1) provides that a bankruptcy estate is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case. The Trustee relies upon the reference to *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), in the legislative history of § 541(a)(1) to support his position that the right to a tax refund is property of the estate. (*See* House Report No. 965, 95th Congress, 1st Session, p.367 (1977)).

The Debtor responds that the Trustee cites no statutory basis to support his demand for turnover of his tax refund. The Debtor notes that he was not entitled to receive the refund until at least three months after the commencement of his case, and he was not in possession of the refund for even a longer period of time thereafter. The Debtor is of the opinion that because the tax year in question did not end until after his petition was filed the refund is not property of the estate. The Debtor argues that he could not have known the amount of his refund when his § 341 meeting was closed in November 2005 and, even if he had possessed his relevant tax records at that time, he would not have been entitled to receive his refund until after the time to object to

discharge had expired. The Debtor indicates he is not certain whether he actually received his refund before or after he received his discharge. The Debtor claims the Trustee's timing for demanding a pro-rata share of his refund is inequitable. It is the Debtor's position that once he received his discharge, his expectation was that his case was all but complete. In addition, the Debtor clams there are too many unknown variables weighing against the Trustee's entitlement to a pro rata portion of his tax refund, including potential setoffs by the state and federal governments and a determination as to whether the Debtor overpaid his tax liability pre- or post-petition. The Debtor also asserts that most individuals are unaware of whether or not they will be entitled to a tax refund in any given year; thus, it is unlikely bad faith enters the equation. In the event a debtor anticipates a tax refund, those monies are usually spent before they are received on items such as real property taxes, a needed home improvement, etc. The Debtor also expresses concern that if the court were to rule in the Trustee's favor, trustees could theoretically hold cases open for months awaiting a potential tax refund.

### Discussion

The Trustee is seeking turnover from the Debtor pursuant to § 542. Section 542(a) provides, in relevant part, that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). The commencement of a bankruptcy case creates an estate. Property of the estate is broadly defined under the Bankruptcy Code. The estate is comprised of all property, wherever located and by whomever held, including "all legal or equitable interests of the debtor in property as of the commencement

6

of the case." 11 U.S.C. § 541(a)(1).

### The Trustco Account

The Trustee is seeking turnover of the non-exempt funds in the Trustco Account as of the petition date. The Debtor's position is that the checks written pre-petition, but negotiated post-petition, should be deducted from the account balance. In turnover motions, courts routinely look to state law to determine whether the property in question is property of the estate. *In re Bennett Funding Group, Inc.*, 367 B.R. 269, 289 (Bankr. N.D.N.Y. 2007) (citations omitted). Under the New York Uniform Commercial Code, a check is simply an order to the drawee to pay the sum stated, signed by the maker and payable on demand. N.Y.U.C.C § 3-104 (McKinney's 2001). The recipient of a check has no right to funds in an account until the check is presented for payment. Under New York law, a check is not considered absolute payment until it is honored by the drawee bank. *Demerritt v. Levitt*, 71 A.D.2d 757, 419 N.Y.S.2d 319, 320 (N.Y. App .Div. 3d Dept. 1979) (citation omitted), appeal denied, 48 N.Y.2d 607, 423 N.Y.S. 2d 1025, 399 N.E.2d 955 (1979). Thus, the court concludes that on the date the Debtor's bankruptcy petition was filed, the entire $3,275.94 balance in the Trustco Account became an asset of the Debtor's bankruptcy estate under § 541(a)(1).

The next issue the court must address is whether it is appropriate to hold the Debtor liable to the estate for the value of his checks written pre-petition, but cashed post-petition. The Debtor argues that any recovery should come from the payees of the checks pursuant to § § 547 or 549. The court does not agree with the Debtor's analysis under § 547 regarding a preferential transfer. The transfers at issue occurred when Trustco honored the checks, which was post-petition, not

pre-petition as required under § 547.[4]  While the Trustee asserts the Debtor should be held accountable, he cites no authority in support of his position.[5]

What little case law there is on this issue falls into two camps.  One camp places the burden on the debtor to recover the money.  *See In re Spencer*, 362 B.R. 489 (Bankr. D. Kan. 2006); *In re Sawyer*, 324 B.R. 115 (Bankr. D. Ariz. 2005); *In re Dybalski*, 316 B.R. 312 (Bankr. S.D. Ind. 2004); *In re Maurer*, 140 B.R. 744 (D. Minn. 1992).  The second camp is of the opinion that the case trustee should be responsible.  *See In re Pyatt*, 486 F.3d 423 (8th Cir. 2007); *In re Minter-Higgins*, 366 B.R. 880 (Bankr. N.D. Ind. 2007);  *In re Taylor*, 332 B.R. 609 (Bankr. W.D. Mo. 2005); *In re Figueira*, 163 B.R. 192 (Bankr. D. Kan. 1993).  All of the courts, however, agree that the funds are property of the estate and that neither outcome is good for debtors.

The court sides with the courts holding the debtor may be held accountable for replenishing the estate.  While the court sympathizes with the Debtor, the court cannot overlook the fact that the balance in the Trustco Account at the time of filing was an asset of the estate.  Up until the time the Debtor's checks were presented for payment, the Debtor retained control

---

[4]To determine whether a transfer occurred within the 90-day preference period for purposes of § 547(b), a transfer made by check is deemed to occur on the date the check is honored, rather than the date on which the payee receives the check.  *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct.1386, 118 L.Ed. 2d 39 (1992).

[5]Neither party provided the court with any authority to support its position.  This led the court to assume there was no precedent for the issue before the court.  The court's own research, however, proved otherwise.  The court is surprised that the attorneys involved, who are well regarded in their field and practice before the court on a regular basis, essentially left it to the court to do their research.  While the court took up the task in this case, in the future, such lack of submissions may result in a motion simply being denied based upon the movant's failure to sustain its burden.

over the balance in Trustco Account. The Debtor could have closed the account, withdrawn

funds, or stopped payment on the checks, regardless of any outstanding checks. Thus, the

Debtor had "possession, custody, or control, during the case," of property of the estate with the

duty to deliver those funds to the Trustee pursuant to § 542(a). *In re Sawyer*, 324 B.R. at 122.

The Trustee is charged with marshaling the non-exempt assets of the estate for the benefit

of creditors. 11 U.S.C. § 704(a)(1). Facing the facts presented here, the Trustee had limited

options. The Debtor did not provide the Trustee with his account number or the branch where he

does his banking. It was not until the Trustee reviewed the Debtor's bank account statements

that he was able to ascertain the actual account balance at filing and the Debtor's account

number. Thus, the Trustee was not in a position to put Trustco Bank on notice of the filing under

Federal Rule of Bankruptcy Procedure 2015(a) prior to the checks at issue being presented for

payment. While the Debtor is correct in asserting that the Trustee could have sought to recover

the funds from the payees of the checks by seeking to avoid the post-petition transfers (*see* 11

U.S.C. § 549), the Debtor does not point to any authority indicating that the Trustee must first

exhaust his other remedies before he can seek turn over from the Debtor. Recovery under § 549

from the payees would have required the commencement of an adversary proceeding (*see* Fed. R.

Bankr. P. 7001(1)). Although the Trustee did not choose to commence the adversary

proceedings in this case, in some instances, the creditor may provide a deeper pocket for recovery

than the debtor.

An argument can be made that the Debtor will pay twice if the Trustee is permitted to

pursue him directly under § 542(a). This may be true, however, under the other scenarios as

well. If the Trustee seizes the money from the Debtor's account, the result may be a bounced

9

check. Alternatively, if the Trustee pursues the payee directly, the Debtor may need to make

amends with the creditor depending on the nature of the debt.[6]  Although the Debtor does not

have control over the timing of the presentment of his checks, he probably was in the best

position to prevent the loss of the estate assets.  After all, he did possess control over his account.

The Debtor could have stopped writing checks before he filed, or he could have delayed filing

until all outstanding checks cleared.

     *Pyatt, Taylor* and *Figueira* side with the debtors on the theory that an entity lacking

possession cannot be the subject of a turnover motion.  However, as Judge Gerling indicates in *In*

*re The Bennett Funding Group, Inc.*, "requiring possession . . . of the property sought for

turnover simply makes no sense."  367 B.R. 269, 288.

> 'Section 542(a) . . . requires the delivery of the property *or the value of* the
> property.  Otherwise, upon receiving a demand from the trustee, the possessor of
> property of the debtor could thwart the demand simply by transferring the property
> to someone else.  That is not what the statute says . . . and can't be what it means.'

*Id.* (quoting *In re Dybalski*, 316 B.R. 312, 315 (Bankr. S.D. Ind. 2004) (emphasis in original)

(citing *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith and Cutler, P.A. (In re USA Diversified*

*Products, Inc.*), 100 F.3d 53 (7th Cir. 1996)).  "'Furthermore, if a lack of present possession,

combined with an explanation, constituted sufficient compliance, little, if any, purpose would be

served by the statutory alternative of requiring delivery of the 'value of such property.'"  *In re*

*Majors*, 330 B.R. 880 (Table), 2005 WL 2077497, at *4 (B.A.P. 10th Cir. Aug. 29, 2005)

(quoting *Boyer v. Davis (In re USA Diversified Products, Inc.*), 193 B.R. 868, 874-75 (Bankr.

---

[6]While in most situations a pre-petition debt will be covered by a debtor's discharge, a
check may have been written to a creditor the debtor has a continuing post-petition relationship
with (i.e. rent or mortgage payment, child support, student loan, etc.).

N.D. Ind. 1995) (internal citations omitted), *aff'd* 196 B.R. 801 (N.D. Ind.), *aff'd*, 100 F.3d 53 (7th Cir. 1996).

Moreover, these courts place the burden on the trustee, in reliance on the duty imposed under Federal Rule of Bankruptcy Procedure 2015(a)(4), to notify a debtor's bank of the bankruptcy filing so that no further checks would be honored, or to stop payment of any outstanding checks. If a bank honors a check before receiving notice of the filing, they assert the trustee could seek to recover from the payee under § 549(a). The problem with this rationale is that often a debtor's check may clear post-petition before the trustee is notified of his appointment, assuming the trustee has been provided with all the information needed to notify the debtor's financial institution. More often than not, the debtor merely discloses a "checking account" on schedule B, without any identifying account information. In addition, most debtors do not identify outstanding checks at the time of filing, and it is not until the first meeting of creditors that the trustee learns of these estate assets.

The last decision holding that the burden rests with the trustee was based on the court's conclusion that § 362(b)(11) authorizes the post-petition transfer of estate property when a payee seeks payment of a pre-petition check post-petition. *In re Minter-Higgins*, 366 B.R. 880. The court must disagree with this analysis. Section 362(b)(11) says nothing about authorizing the post-petition transfer of estate assets. It merely excepts from violation of the automatic stay a payee's presentment of a check for payment.

### The Income Tax Refund

The Trustee seeks the pre-petition portion of the Debtor's tax refund as property of the bankruptcy estate. The Debtor has not put forth a persuasive argument as to why his tax refund

11

is not property of the estate. Instead, the Debtor seems to be arguing that because he received his discharge, his case should be closed, and it is too late for the Trustee to administer his refund. The Debtor seems to be arguing that receipt of a discharge is tantamount to the Trustee's abandonment. This simply is not the case. The Debtor's right to receive a discharge and the Trustee's administering of assets are, in most instances, two separate but parallel paths taken over the course of a chapter 7 case. In an asset chapter 7 case, often a debtor will receive a discharge within a few months of filing, but the case may remain open several months thereafter for the trustee to marshal, liquidate, and distribute assets to creditors. Thus, whether the debtor received his tax refund before or after his discharge is not determinative of whether the refund is an asset of the estate.

The case law is clear that property of the estate encompasses a debtor's interest in any income tax refund based on pre-petition income and withholding. *In re Edwards*, 363 B.R. 55, 57 (Bankr. D.Conn. 2007) (citing *Kokoszka v. Belford*, 417 U.S. 642, 647-48, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *see In re Law*, 336 B.R. 780 (B.A.P. 8th Cir. 2006) (federal and state income tax refunds that chapter 7 debtors received post petition were included in "property of the estate," as contingent interests in future payments which debtors possessed when they filed bankruptcy); *see also Araj v. Kohut* (*In re Araj*), 371 B.R. 240, 243-44 (E.D. Mich. 2007) (noting that "every court that has considered this issue has held that the portion of an income tax refund that is based upon the pre-petition portion of a taxable year constitutes property of the bankruptcy estate." (citations omitted)). This would include a pro rata portion of a debtor's income tax refund if the debtor's petition was filed during, but prior to the close of, the relevant tax year. *In re Barowsky*, 946 F.2d 1516 (10th Cir. 1991); *see In re Nye*, 250 B.R. 46 (Bankr. W.D.N.Y. 2000). The court

12

concurs with the reasoning of these cases and holds that the Trustee is entitled to that portion of

the Debtor's tax refund attributable to withholding of pre-petition income.[7]  As the Trustee

indicated, this portion can easily be computed by multiplying the amount of the refund by a

fraction whose numerator is the day of the tax year on which the bankruptcy petition was filed

and whose denominator is 365.

### Conclusion

Based upon the foregoing, the Trustee's motion is GRANTED, and the Debtor shall

turnover to the Trustee the sum of $1,129.48, comprised of the non-exempt portion of the

Trustco Account ($775.94) and a portion of his 2005 income tax refund ($353.54), within thirty

days of entry of this Memorandum-Decision and Order.

It is SO ORDERED.

Dated:    4/3/08                              /s/ Robert E. Littlefield, Jr.

                                             Hon. Robert E. Littlefield, Jr.
                                             U.S. Bankruptcy Judge

---

[7]Pursuant to New York Debtor & Creditor Law § 282, New York has opted out of the
federal exemptions set forth in § 522 of the Bankruptcy Code.  New York Debtor & Creditor
Law § 283(2) allows a New York debtor a cash exemption of $2,500, and the statute specifically
defines cash to include income tax refunds.  Thus, in many instances, a debtor's tax refund will
be exempt up to $2,500.  Here, however, the Debtor has claimed his cash exemption for the
funds in the Trustco Account.